**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| In Re: | ) | In Proceedings |
| | ) | Under Chapter 13 |
| KAMILLE V. GUTHERY, | ) | |
| | ) | Bk. No. 19-40641 |
| Debtor. | ) | |

**OPINION**

The issue before the Court is whether a below-median Chapter 13 debtor may deduct expenses that she is not presently incurring, but expects to incur in the future, when calculating her disposable income under 11 U.S.C. §1325(b)(1)(B).

**FACTS**

On August 25, 2019, Debtor Kamille V. Guthery ("Debtor"), filed a petition under Chapter 13. The Debtor listed total net income on Schedule I of $4,346.00 consisting of wages of $1,091.00 and Veterans Administration disability of $3,255.00. Her expenses as a single mother of two children were listed on Schedule J as $3,486.00, not including her mortgage and vehicle payments, leaving $860.00 available for her Chapter 13 plan payment. Her Chapter 13 plan proposed a monthly payment of $1,850.00 for sixty months, to be paid primarily to secured creditors with liens on her residence and two vehicles. The Chapter 13 Trustee objected to the Debtor's plan on the basis that the plan was not feasible and that retention of two vehicles by the Debtor was not reasonably necessary.

On November 6, 2019, the Debtor filed her First Amended Plan mooting the Trustee's Objection to the original plan. The First Amended Plan reduced the proposed monthly payment to $340.00 and provided for the surrender of the Debtor's residence, thereby eliminating the mortgage payment. The Trustee then filed an Objection to the First Amended Plan on the basis that the

1

Debtor's plan did not commit all the Debtor's disposable income to the plan, and again asserted that retention of two vehicles was not reasonably necessary. An Agreed Order resolving the Trustee's Objection was entered on January 22, 2020 granting the Debtor thirty days to file an amended plan to pay general unsecured creditors a total of $1,000.00, and requiring the Debtor to file Amended Schedules I and J within sixty days due to the Debtor's new employment and relocation to California.

On February 2, 2020, the Debtor filed her Amended Schedules I and J, and her Second Amended Plan pursuant to the Agreed Order. Amended Schedule I listed the Debtor's new employment with the Department of Defense with net monthly wages of $4,839.26, and her Veterans Administration disability of $3,255.00[1] for total net monthly income of $8,094.26. Amended Schedule J listed increased expenses, including an increase in "Childcare and children's education costs" on line 8 from $606.00 on the original Schedule J to $1,400.00, and an increase in "Health Insurance" on line 15b from $0.00 to of $350.00. The Trustee filed an Objection to the Debtor's Second Amended Plan citing his need for documentation of the increased expenses in order to determine the Debtor's disposable income.

At the hearing on the Trustee's Objection to the Debtor's Second Amended Plan, counsel for the Trustee asserted that the Debtor had not provided the Trustee any evidence to support the

---

[1] On August 23, 2019, two days prior to the Debtor's bankruptcy filing, the Honoring American Veterans in Extreme Need Act of 2019 (the "Haven Act") was enacted. PL 116-52, 133 Stat. 1076 (2019). The Haven Act amended 11 U.S.C §101(10A) to exclude from the definition of "current monthly income" any monthly compensation "in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services, except that any retired pay excluded under this subclause shall include retired pay paid under chapter 61 of title 10 only to the extent that such retired pay exceeds the amount of retired pay to which the debtor would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title." *Id*. at §2.

In this case, the record does not indicate whether the Debtor's Veterans Administration disability is excluded from "current monthly income" pursuant to the Haven Act amendment. As the Trustee has not asserted that the Debtor's disability payment falls outside the Haven Act exemption, nor argued that the Debtor's income on Amended Schedule I is now above-median, the Court will consider the Debtor's income to be below-median in analyzing the question of whether the Debtor may deduct the expenses listed on Amended Schedule J.

"Childcare and children's education expenses" or the "Health Insurance" expense.[2] Counsel for the Debtor explained that when the Debtor moved to California she began to incur $1,144.00 in day care costs for her three-year old child. However, after the onset of the coronavirus pandemic, the day care provider closed and the Debtor's child was now being cared for by relatives. Counsel asserted that when the day care provider is able to reopen, the Debtor will once again incur the childcare expense. With respect to the health insurance expense, counsel for the Debtor explained that the Debtor had applied for health insurance for her two children through her employer and is awaiting a decision on whether her application has been accepted. Counsel explained that the open-enrollment period for the employer sponsored health insurance would not begin until December, but that the Debtor is seeking to qualify prior to that date. The cost for the health insurance will be $350.00. The Debtor was not present at the hearing to testify; however, counsel for the Trustee did not contest the facts proffered by Debtor's counsel. Rather, he argued that the Debtor must remove the childcare and health insurance expenses from Schedule J because the Debtor is not actually incurring those expenses. He suggested that if the Debtor did, in fact, incur those expenses in the future, she could again amend Schedule J and the expenses could be considered in determining her disposable income.

The Court took the matter under advisement to consider whether the Debtor may deduct the childcare and health insurance expenses on Schedule J, notwithstanding the fact that she is not currently incurring those expenses.

---

[2] Counsel for the Trustee also noted at the hearing that the Debtor had not documented the "Water, sewer, garbage collection" expense on line 6b of Amended Schedule J, but counsel did not pursue that point acknowledging that the amount at issue was de minimis.

## DISCUSSION

To answer the question presented, the Court must examine the term "projected disposable income" as contained in §1325(b) of the Bankruptcy Code. Every "interpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'" *Ransom v. FIA Card Services*, 562 U.S. 61, 131 S.Ct. 716, 723-24, 178 L.Ed. 2d 603 (2011) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026 103 L.Ed.2d 290 (1989)). Section 1325(b)(1)(B) of the Bankruptcy Code states:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, *as of the effective date of the plan* . . . the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan. 11 U.S.C. § 1325(b)(1)(B) (emphasis added).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) changed the methodology for determining "disposable income", while leaving the term "projected disposable income" undefined. *Hamilton v. Lanning*, 560 U.S. 505, 509-510 (2010). "Disposable income" is defined in 11 U.S.C. §1325(b)(2) as:

> "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended –
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor…"

The first component of that measurement, "current monthly income", means the debtor's average monthly income received during the six months prior to the filing of the bankruptcy petition. §101(10A)(A)(i). In measuring the second component, debtors with above-median income calculate the "amounts reasonably necessary to be expended" pursuant to the means test

contained in §707(b)(2)(A) and (B). *Lanning,* 560 U.S. at 510. For below-median debtors, the phrase "amounts reasonably necessary to be expended" includes "the full amount needed for 'maintenance or support'" of the debtor or a dependent. *Id*. citing §1325(b)(2)(A)(i).

In *Lanning,* the question before the Court was how to interpret the term "*projected* disposable income*"*, in light of the changes to the term "disposable income" made by BAPCPA. The debtor in *Lanning* had received a one-time buyout from her former employer during the six months prior to her bankruptcy filing, inflating her "current monthly income" and putting her income above the median for her state. *Id.* at 511. Although the buyout was necessarily part of her "current monthly income" according to §101(10A)(A)(i), the debtor argued that the buyout should not be considered for purposes of determining her "projected disposable income" because her income going forward was insufficient to make the payments required by a mechanical application of the Code provisions. *Id*. at 511-512.

The Supreme Court initially addressed the question of when such a calculation should be made, stating, "§1325(b)(1) directs courts to determine projected disposable income, 'as of the effective date of the plan,' which is the date on which the plan is confirmed and becomes binding". *Lanning,* 560 U.S. at 518. Then, after considering the text of §1325 and pre-BAPCPA practice which favored a "forward-looking" approach, the Court concluded that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes that are known or virtually certain at the time of confirmation." *Id*. at 524.

The Seventh Circuit Court of Appeals offered additional guidance regarding the *Lanning* standard in *Marshall v. Blake*, 885 F.3d 1065 (7th Cir. 2018) (*overruled on other grounds*, *In re Wade*, 926 F.3d 447 (7th Cir. 2019)).[3] In *Marshall,* the bankruptcy court had made adjustments

---

[3] In *Wade,* the Court dismissed the debtors' appeal because they had failed to file a petition for permission to take a direct appeal. *In re Wade*, 926 F.3d 447, 451 (7th Cir. 2019). As to *Marshall*, which the Court had heard on

5

to the debtor's projected disposable income, allowing for future expenses such as the high school graduations of the Debtor's sons. *Id.* at 1081. On appeal, the trustee contested the applicability of the *Lanning* standard because the debtor in *Lanning* had above-median income whereas the debtor in *Marshall* had below-median income. *Marshall,* 885 F.3d at 1078. Finding no support for the Trustee's argument, the Court stated that "the *Lanning* Court's reasoning applies with equal force to below-median income debtors." *Id.* See also, *In re Orozco*, 613 B.R. 23, 29 (Bankr. D. Ore. 2020). In considering the expenses proposed by the debtor, the Court in *Marshall* noted that "§1325(b)(2) says nothing of 'actual' expenses; it merely describes 'amounts *reasonably necessary* to be expended…for the maintenance or support of the debtor or a dependent of the debtor'." *Marshall,* 885 F.3d at 1081 (Emphasis in original.). The Court emphasized that in determining projected disposable income, the focus is on the word "projected", and as to that term, "the word 'projected' implies more than merely multiplying past expenses by the amount of time in the commitment period." *Id.* The Court found the adjustments made by the bankruptcy court for the projected expenses "consistent with *Lanning* and the text of §1325(b)(2)" as they were "known or virtually certain future expenses" and were "reasonably necessary". *Id.*

More recently, the Bankruptcy Court for the District of Colorado applied the *Lanning* standard to deny a debtor's projected expenses for home repair, vehicle repair and medical treatment on the basis that they were too uncertain to pass muster. *In re Styerwalt*, 610 B.R. 356, 383 (Bankr. D. Colo. 2019). Setting forth the burden of proof, the court stated: "[w]ith regard to evidentiary burdens in confirmation contests, the Debtor bears the burden of providing the

---

certification by the bankruptcy court, but without the required petition for permission to appeal, the Court stated "we overrule *Turner* and *Marshall* to the extent that they approved exceptions to compliance with Bankruptcy Rule 8006(g) and Rule 5(a)(1) of the Federal Rules of Appellate Procedure. *Id* at 451.

required elements of Section 1325" and "[t]he legal standard is the preponderance of the evidence." *Id*. at 368 (citations omitted). In that case, the debtor had various medical issues that were likely to require future treatment, but the specific treatment and associated costs were uncertain. *Id.* at 383. Likewise, the debtor's vehicle suffered mechanical problems, and his home required repairs and maintenance, but the debtor offered no evidence that the repairs were imminent. *Id*. at 383-384. In denying the expenses, the court noted that if the debtor did incur the additional expenses in the future, he had a remedy in the form of plan modification. *Id.* at 384.

This Court must likewise determine whether the childcare and health insurance expenses proposed by the Debtor, are "reasonably necessary" as required by §1325(b)(2)(A)(i), and further are "known or virtually certain" to be expended at the time of confirmation as required by *Lanning*. As to the first inquiry, Amended Schedule J shows that the Debtor is a single mother of two children, ages three and sixteen. Amended Schedule I confirms that the Debtor is employed and is the sole support of the children.[4] Given these facts, both child-care and health insurance expenditures are "reasonably necessary" expenses for the Debtor and her dependents.

The more difficult question is whether these expenses are "known or virtually certain" to be expended at the time of confirmation. Although the Debtor did not testify at the hearing on this matter, her counsel proffered certain facts which were not disputed by the Trustee. It is undisputed that the Debtor is not presently paying the childcare or children's health insurance expenses set forth on Amended Schedule J.

With respect to health insurance, counsel for the Debtor explained that the Debtor applied for the health insurance with her new employer outside the annual open enrollment period which

---

[4] The Debtor's Amended Schedule I shows that the Debtor receives no child support. Schedule A/B further shows that the Debtor is owed in excess of $45,000.00 in back child support obligations.

7

begins in December. She is awaiting acceptance of her application. The cost of the insurance will be $350.00 as set forth on Amended Schedule J. As the Seventh Circuit noted in *Marshall*, §1325(b)(2) does not refer to "actual" expenses; the focus is on "projected" expenses. *Marshall*, 885 F.3d at 1081. This Court has before it sufficient facts to determine that the health insurance expense is "known or virtually certain" to be expended. The Debtor has already applied for the children's health insurance with her new employer and has a cost for that insurance. There is nothing before the Court to suggest that the Debtor's application will not be approved.

This Court can likewise allow the Debtor's childcare expense, notwithstanding the fact that the expense has been temporarily suspended by the coronavirus pandemic. The record reflects that the Debtor was paying $1,144.00 monthly in childcare for her three year old daughter until the childcare provider closed due to the pandemic, and that the Debtor intends to return her child to the childcare facility when she is able to do so. Although the Debtor is not actually incurring the childcare expense at this time, the focus in determining "projected disposable income" is on "projected" expenses rather than those actually being incurred. The question is whether there is a level of certainty to the projected expense at the time of confirmation. Here, the fact that the Debtor, a single mother, needs childcare for her preschool age child is known. Likewise, the amount of the projected expense can be estimated based upon the cost incurred by the Debtor prior to the temporary suspension of care. The Court can, therefore, conclude that the Debtor's claimed childcare expense of $1,144.00 is "known or virtually certain" to be expended as required for purposes of determining her projected disposable income.

The Trustee's suggestion that the Debtor can amend her Schedule J and confirmed Plan once she actually starts paying the childcare expense is not a workable solution. The lack of a childcare payment is the temporary result of protocols adopted to combat the coronavirus

pandemic. At some point, a childcare expense will be incurred. The "on-again, off-again" nature of the protocols adopted to combat the coronavirus pandemic could require frequent amendments to the Debtor's schedules and Plan. It is not reasonable to expect the Debtor to amend her schedules and Plan every time there is a change to the protocols that temporarily impacts her childcare expense. Moreover, recurring amendments to the Debtor's schedules and Plan would negatively impact the efficient administration of this case by imposing additional burdens on the Trustee, the creditors, and this Court with the filing of each amendment.

      Accordingly, the Trustee's Objection is OVERRULED.

      SEE SEPARATE ORDER ENTERED THIS DATE.

ENTERED: September 9, 2020

                                          /s/ William V. Altenberger
                                          UNITED STATES BANKRUPTCY JUDGE